May it please the Court, Andrew Jacobs for the Appellant, America's Servicing Company, and I would like to request to reserve, if I could please, five minutes of time for rebuttal. You may. Well, Your Honors, I guess I was going to start somewhere else, but we got that order a week ago saying, come prepared to discuss when the automatic stay ends, when the Court orders something, when a violation of the stay ends, when the Court orders that you stop violating it, or when you actually do. So let's start there, since the Court asked that in a writing. And I would say that in this case, I agree with the Bankruptcy Court that the stay violation ended before the Appellate Attorney's fees at issue happened here. The Bankruptcy Court, in the July 12, 2011 hearing, before it ruled, originally denying the request for fees, and this is at the excerpts of record, page 118, stated, here the wrongful act stopped before the appeal. So the attorney's fees don't continue through there. Well, that's what they said, but we're sort of up in the air on the issue. Here the they've been told they can't do it anymore, but then the opposition says, yeah, but we didn't get the property back until after the filing of the appeal. Now, is there any case you found that can assist us with this? I mean, has this come up before in the world of bankruptcy law as to when the cutoff date is? Is it when the order is entered, or is it when the person gets their property back? You know, Your Honor, we looked at this, and what we found was that it was ambiguous. There was the Ninth Circuit's decision in In re Dawson, after which there was a remand to the Bankruptcy Court, and the 2006 decision in the Bankruptcy Court used some language that you could apply either way in this case. It talked about the rescission of a transaction or a deed. Here the record is clear that by order of the Bankruptcy Court, the trustee's deed upon sale was, in fact, rescinded on February 12. But I guess what I'm trying to say, and trying to meet the substance of that question fully, is that we think that the March 3 date works equally well for the point of our argument. I'm willing to accept the later date for purposes of my argument, because it makes no difference. I understand that on March 2, the notice of appeal was lodged, and on March 3, the House was then, after the prior rescission of the trustee's deed upon sale, formally reconveyed to Ms. Schwartz-Tallard. However, not one-tenth of an hour of attorneys' fees occurred before the 3rd of March. And the – sorry, Your Honor? When there's a rescission ordered, it takes place at the time the order is entered? The rescission of the trustee's deed upon sale occurred on February 12, 2011, at the time it was ordered. And that could be given to have legal significance. Here, I believe, Your Honor, the rescission of the deed upon sale is the rescission of the sale of the property from America Servicing Company to itself. My understanding in the record is that ASC bought the property as a credit bid. And so, in essence, the sale to itself was undone on February 12, and the property was returned to it for purposes of handing it back to Ms. Schwartz-Tallard. Okay. The party agreed. I understand your position. Now, tell us why you don't think it makes any difference. It doesn't make any difference because the real question that sheds great light on this, powerful light, is Sternberg. Because Sternberg teaches that there is both a temporal line that is drawn. It says, after the stay violation has ceased, there will not be fees. That's very clear. And second of all, Sternberg draws a conceptual line stating that damage actions also do not lie, that you cannot recover the fees on fees for the damage action. And what is requested here is both of those two things. And so Sternberg ---- Well, wait. Let me interrupt. Didn't that come in the context of filing an adversary proceeding for additional damages and fees, right? That's correct, Your Honor. And there's language in that Sternberg decision which suggests the reason or the rationale for it, the very basic underlying rationale, was you cannot use that provision as a sword. And the Court determined that by bringing, initiating an adversary proceeding, looking for additional damages was a sword as opposed to a shield. I think this ---- Didn't they use that language? It used sword-shield language, but it also let stand a claim for emotional distress damages. And what it did was ---- Let me finish my thought. Oh, sorry, Your Honor. Okay. But they did ---- that was kind of the underlying basis. We're not going to let you use it as a sword. How is defending against an appeal that attacks both the finding of violation of the stay order and the resulting damages already determined anything other than a shield as opposed to a sword? Well, I think that question was answered by Sternberg. And I don't mean to be circular about that, because there Sternberg said you can't get the fees where you were the victim of a stay violation. You get to have your emotional distress damages. Those are the, quote, actual damages, the statute mandates. But it said even though you needed to spend fees to get those damages, we're not going to let you have those fees. Even though the bankruptcy appellate panel in In re Walsh decided in 1998 a decision basically exactly premised on Your Honor's question, In re Walsh said, well, you know, it's really purely defensive to give you your appellate fees and to give you your fees needed to get the damage claim. That's really the context, and I'll acknowledge it, of the broader criticism of Sternberg in bankruptcy courts outside this circuit. I believe a judge in the Northern District of California, one in New Hampshire and one in Ohio, all bankruptcy judges, all ask the question I'm hearing in essence within Your Honor's question, which is, what good is it to be able to get your actual damages if I have to spend all these darn attorney's fees to get them? How about, wasn't part of the appeal involving trying to set aside the violation itself? The appeal that we had was not, Your Honor. That's not. And it's an interesting way it plays out. There are at least two reasons that that's true. One is the day after the notice of appeal, the house is reconveyed, evidencing by behavior the return of the house. But by that time, at that point, damages had already been assessed. The damage that were awarded here were for pre-conveyance damages. That's correct. And the fees, which are not involved here, you got fees for that. Now, your client filed an appeal, right, of the bankruptcy court's order. And in that appeal, didn't you raise the position or didn't you assert the position that there was no violation of the stay? Well, there's two different things. Did you or did you not? Because maybe I'm misreading the record. Yes. The short answer is yes. Okay. But. So what happens if the debtor doesn't defend against that appeal? You win the appeal. The violation is set aside. If the violation is set aside, they still get the house. That's the real underlying substantive point, I think, that's important to focus upon here, Your Honor. Okay. The appeal wasn't that we were trying to keep the house. The appeal was to say that there was ambiguity in how the stay violation occurred, that the Court had given an oral ruling, not memorialized into a writing for three weeks, and the Court eventually rejected that argument. And we're not here to dispute that. Right. That's passed. The point is we weren't trying to get the house back. We were litigating at that point whether the stay violation was willful as a window into sanctions. We weren't trying to actually get the house back, which was the stay violation. I understand that. I understand that. But you were attempting to set aside the bankruptcy's order, finding your client violated the order, the stay order. I think that we willfully violated the order. That's how I read the papers, is that we're saying we didn't willfully violate it because of the ambiguity in communication. And, yeah, we shouldn't be hit with sanctions and fees. I don't read anything in the appeal that we want to go keep the house now after we've done it. I'm not suggesting that. Okay. Because that's the stay violation that is a critical point in Sternberg and, I think, in the resolution of this appeal. So from our point of view, Sternberg makes very clear that when you have a damages action, the damages action has to be for the original underlying damages. And Sternberg could not have been clearer that it was a course correction against the bankruptcy appellate panel in In re Pace and in In re Walsh determining that the very theory underlying these questions was the right way to read 362K. The Ninth Circuit came in and said, you know, we see how the BAP has read damages, actual damages in In re Walsh. And In re Walsh was a case that concerned appellate fees. But critically, and I think this is very important and subtle in understanding Sternberg, in In re Walsh, even there where the BAP said that appellate fees could be awarded where they were occurred in consequence of fighting an appeal, a non-frivolous appeal of a stay violation. That's exactly Walsh. Okay. But in Walsh, even there, the litigant asked for the fees in the Article III court in the Ninth Circuit. The Ninth Circuit authorized the bankruptcy court to go ahead and deal with the issue of fees. In this case, you have the structurally improper thing happening where the bankruptcy court is put in a position of granting fees for what happens in an Article III court that sits above it. That really seems improper after Stern v. Marshall. It's incongruous because the bankruptcy court that was asked to do it said, quote, here the wrong act stopped before the appeal. Well, if the Article I court understands that the wrong court, the wrong act stopped before the appeal, then it's not about fixing the wrong. It's not about the breathing space that Sternberg and 362K are after. It's about remediating and making whole. And so what the BAP decision does is it sort of gets away from the bright lines that Sternberg very explicitly drew when it very clearly stepped the BAP away from In re Walsh. And what the BAP does instead in the decision in our case is it reconceives Sternberg as a general policy argument about making debtors whole. But that reading, respectfully, cannot be squared with what this Court did in Sternberg and what controls the outcome of this appeal. In this case, all of the attorney's fees occurred after the House is given back. The House is given back on March 3, and the attorney's fees, there was one-tenth of an hour that day. Then there's a brief hiatus. Then all the attorney's fees come in after that. And these attorney's fees are only requested after the underlying sanction had been issued, and in addition to that, after the case had gone to the district court and it had come all the way back, and only then we hear that, well, the Article I court should issue sanctions for the mere fact of appealing to the Article III court. And it's important here. We won some of the points. We didn't win all the points, but we won some of the points. There was an improper Rule 11 sanction, and the BAP agrees with us about that, and the district court agreed with us about that. The amount of attorney's fees was simply announced as $20,000 originally, without a factual basis or any sort of prove-up. I understand and discussed in the BAP how the amount upon remand turned out to be about the same, and that's great. But that doesn't mean that simply saying $20,000 in the first place was well taken or the right way to proceed. It was not. Excuse me. Is this three minutes of the 15 or three of the 10? Three of the 15. I'm sorry. May I please reserve the remaining three? Okay. Thanks, Your Honor. Good morning, Your Honor. May I please support Christopher Burke appearing for the appellee, Ms. Schwartz-Tallard? Your initial question is, when does the stay violation end? It doesn't end until the debtor no longer has to defend. Here, the debtor was put in the position of having to defend. Sternberg specifically said, first, see when the stay violation ends, but you don't get damages in pursuit of damages. There was no pursuit here. This was just defensive. Now, counsel has said they won some points at the district court in the first appeal. They lost on every basis. Whether the stay was violated, that was upheld. The emotional distress damages were upheld. The punitive damages were upheld. The only two issues were, did the bankruptcy court figure out the attorney's fees correctly because the bankruptcy court threw out a number? When that was remanded, the attorney's fees came in even higher. So they lost on that issue. The only other issue was 9011 because the bankruptcy court said this was a violation of 362K or 9011. The district court just said there wasn't enough here for 9011 violation. Let the bankruptcy court reconsider that or rule under 362K. I don't think there's a whole lot of dispute about that. Pell's counsel says that once the violation of the stay order is resolved, that is, in this case, transferring the property back, under no circumstances can you get additional fees. I think that's the essence of Pell's position. Three things. First term. Three things. Number one, the court orally ordered the property. Which court? The bankruptcy court on January 7th, 2010, orally ordered the property back in two days. The order didn't get signed until five weeks later, February 17th, roughly. And the stay, excuse me, the property wasn't put back into the debtor's name until March 3rd. And I'm not even sure it's really in her name. What they did is file a document attaching the order to it. Now, if the debtor had wanted to sell at that point, I think there would be some big problems on the debtor saying she had clear title. Is there anything in the record on this issue? Just on page 143 shows the document that was filed. So there's nothing in the record that shows that she didn't get control of the property. No, that's true. All right. Let's go from there. Does your case depend upon Judge Pappas's analysis of what he thinks Sternberg holds? It's clear that the BAP doesn't care much for Sternberg. It's clear that some district judges don't or bankruptcy judges don't like Sternberg. But that's not our issue. We didn't – we have a panel decision which governs our determination and should govern the BAP. As I read Judge Pappas's decision, it seems to me that he's misreading Sternberg and trying to cut it back to where other people think Sternberg should have ended up. If so, I don't see how we can affirm him. Two points. This case is fundamentally different than Sternberg. Sternberg had to do with somebody pursuing, using it as a sword to get fees. Ms. Schwartz-Tallet never did anything wrong. Her property was foreclosed. They held onto it for eight months. She finally had to hire – I was the third attorney – to get her property back, and then ASC appeals. Here's the problem. What does Sternberg say and what does Dawson say? The stay involves giving the debtor a breathing spell. Let her reorganize her finances. We don't have that here when they appeal. The reason is because what happens to the attorney? I could have just dropped it. I could have been the third one to drop her case. And that often happens. That's the problem. One problem with Sternberg. Two, I could say pay me up front. What does that do? Let me interrupt because we have limited time. The judge's question, I think, is we're bound by Sternberg. But it doesn't apply in this case. Unless you can distinguish Sternberg, that seems to be the end of the day. So I think your attention should be drawn to how do you distinguish Sternberg? Two ways. And counsel for the appellate says Sternberg, the basic premise of Sternberg is once the violation is remedied, all attorney's fees, without exception, stop. Except Sternberg in the same sentence says once the violation has ended, comma, any of the fees incurred after that point in pursuit. This was not in pursuit. So Sternberg's different. And second, since Sternberg, there's a Supreme Court case. What page are you reading from in Sternberg? Page 947. 947.  Would you like me to approach, Your Honor? No, we're good. I've got it. It's after, it looks like, at least on mine, it says 1112. 1112. It's the first paragraph. The middle of the first paragraph. Yeah. After Black's Law Dictionary. Uh-huh. But the second problem was the same. It didn't define what in pursuit of damage award meant. It kind of left that up in the air. In pursuit of a damage award. In that context, the pursuit was a separate, initiated by the debtors, adversarial proceeding. That was the context. Correct. Okay. So you're distinguishing that actual scenario from this scenario where your client had to defend against an appeal brought by the violator, which we talked about earlier, the purpose for those appeals, that appeal. Exactly. And the point is, it didn't give her a breathing spell. Mentally or economically, if I said, you have to pay me up front, and it affects other creditors. If she was paying me, then she wouldn't be paying her house. She wouldn't be paying her Chapter 13 plan. So there's damages throughout. But I did file a 28-J letter. It's a non-bankruptcy case, but there's a Supreme Court case, FAA v. Cooper, that said the use of Black's Law Dictionary for actual damages is general and circular. And that was the linchpin of Sternberg. And that's a secondary problem with Sternberg, which I'd be happy to brief post-appeal, but it wasn't my 28-J. Counsel, Judge Gould, if I could interject. I'm not really interested in problems with Sternberg because, as Judge Wallace said, our panel has to follow it. We're not an end-bank court, so we have to follow Sternberg. So my question to you is, can you succinctly state how the BAP distinguished Sternberg? And I think I have my conception of that. But tell me what you understand was the BAP's reasoning why Sternberg did not apply. And then tell me if you agree with the BAP or if you have some other theory as to why Sternberg doesn't apply. But it has to be a theory other than saying Sternberg is wrong. Fair enough. It distinguished Sternberg because it noted the two prongs of the stay, of the automatic stay, which would give the debtor a breathing spell and to protect other creditors, so one creditor doesn't override everything. Here, what happened was the debtor wasn't given a breathing spell. Okay, the property is back in her name. They already filed an appeal. She's back on the defensive. And second, if she had to pay me, she couldn't complete or continue in Chapter 13 or pay the house. And that or if I did a FIAP, it would take money from other creditors. So both prongs are implicated once ASC appealed the decision of the bankruptcy court. Okay. So you've – but it seems to me that's somewhat inconsistent because Sternberg itself recognizes it's cutting away some of the goals that other courts have seen. And it says it refers to restatement second. The damages in a tort action do not ordinarily include compensation for attorneys' fees and other expensive litigation. The same is true here. The context of the goals of the automatic stay support this narrower understanding and is the one we adopt. Now, I just don't – I can't get the BAP to be consistent with that. The BAP wants to go the other direction and expand to allow attorneys' fees. And whether I agree with Sternberg or not, Sternberg seems to say the BAP is wrong in trying to make that determination. And if so, how are you going to succeed on this appeal? Because Sternberg – Walsh was a BAP case that dealt with attorneys' fees on appeal. Sternberg didn't specifically overrule Walsh, saying you don't get attorneys' fees on appeal. It just disagreed with the definition of actual damages in Walsh. We specifically identified that problem with Walsh, which the BAP then says, no, no, no, Walsh is okay. Now, I don't agree with Sternberg, because the Sternberg decision kept and continually talks about pursuing. We're not pursuing. No, it just – in one part of it, it said pursuing. At the bottom of the paragraph says a more – a much broader statement referring to the restatement of saying there's no attorneys' fees on appeal, and then says this same is true here. The context and goals of the automatic stay support this narrower understanding. And that's the one we adopt. I don't think you can pull that one – that one word out and say, therefore, it's distinguishable, when the Sternberg court said what it did at the bottom of the paragraph. Now, tell me where I'm wrong. Well, I would just read from Sternberg. Permitting a debtor to collect attorney's fees incurred in prosecuting a damage action would further neither the financial nor non-financial goals. And here, by defending, it is promoting the non-financial and financial goals, giving the debtor a breathing spell and protecting other creditors. Okay. If an appellant has succeeded in its appeal for which it's seeking fees here and had been reversed, would that have reversed the damage award, including the prior attorney's fees? No, because that wasn't appealed. You're saying the district court that affirmed the bankruptcy court, that was never appealed, so we're just here on my fees for defending the appeal. No, but had they won – your award or your plan's award was affirmed. Both the original damages, the emotional distress, et cetera, plus those fees incurred up to that point. That was an award that your client got. That was appealed, was it not? That was appealed. And what – and it was affirmed, correct? Everything was affirmed. Now, what would have been the result had it been reversed? The debtor could have lost her house because – Well, would she have lost at a minimum her damages? Yes. And the attorney's fees for the prior litigation? Yes. Okay. She would have lost it all. That's why it had to be defended. Okay. Thank you. If there's no other questions. Did I answer your question, Judge Gold? Yes, you did. Thank you. Thank you. Thank you. I think you have a couple of minutes left for rebuttal. Can you answer that last question as well? If you're – if you've been successful in reversing the violation, the damages, including the attorney's fees at that point, would they have been set aside? The attorney's fees themselves? All the damages, including attorney's fees up to that point. The ones that had been previously awarded. The monetary damages except for the proof of attorney's fees. Actually, no. I guess the attorney's fees, too, would have been set aside because it wouldn't have been a willful stay violation. It would have been a completed and passed one. Okay. But all the money – all the money could have been reversed, not the house itself,  So unless the debtor, in this case, defended against your client's appeals, she would have lost everything that she was entitled to if it were, in fact, a willful violation. She would have lost the damages, but she wouldn't have lost the house. It wouldn't have continued the stay violation. That was no longer at issue. And I think that's the key. But everything else about that absolutely could have been reversed, Your Honor. Just a couple of real quick points. I think this, again, is an exceptionally unusually closely fitting syllogism. Sternberg says that one of the questions was, is it my position? Sternberg says, quote, once the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for actual damages. Okay. Let me ask you about that. In pursuit of a damage award. Right. What about in defense of a damage award? That's the shield and the sword I'm talking about. That's the thing that's funny about these facts, Your Honor. It could easily have been argued that some of the underlying damages were barred by Sternberg in the first place. But Sternberg didn't exist yet. And Sternberg was argued after it existed. And so continuing to pursue damage awards on appeal, for the reasons I think I've already stated, I don't mean to be repetitious, is barred both temporally and in concept by Sternberg. Sternberg did expressly kind of rebuke and walk back in Ray Walsh. It just did. And I'd like to answer also if I could Judge Gold's question briefly before we leave here. The question was, what was thought of the BAP's decision? What did the BAP do? And was it sustainable without just basically abrogating Sternberg? And I think that what the BAP did to try to meet the substance of this conversation a bit is it improperly conflates the stay violation itself with litigating about the stay violation. That's the whole analytic move in that opinion. And that's why it's wrong, number one. And number two, the defense that was offered by counsel, and I appreciate this, you know, that's where you have to go to try to redeem that BAP opinion. You say, well, she had to pay me, and that's difficult to do. So paying debtors' counsel can be difficult. But that's always true in bankruptcy. The Ninth Circuit was making a rule of law in Sternberg that it knew affected debtors who it knew could and would be short on funds. And if that argument works, then it completely undoes Sternberg because everybody is going to need to get their consequential damages fees, or otherwise they can't litigate. So that argument proves too much and can't be the deal. And I think my time is up, Your Honors. Thank you very much. The case just argued to be a submitted decision. That completes our work for this week, and we stand adjourned.
judges: Huck, Wallace, Gould